IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRIAD AT JEFFERSONVILLE I, LLC,     *
*et al.*,

                              *

        Plaintiffs

                              *   Case No. 08-00329

v.

                              *

MICHAEL O. LEAVITT, *et al.*,

                              *

        Defendants

                              *

## PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)

Plaintiffs Triad at Jeffersonville I, LLC, Triad at LaGrange I, LLC, Triad at Lumber City I, LLC, Triad at Powder Springs I, LLC, and Triad at Thomasville I, LLC (sometimes collectively "Triad") by their undersigned counsel and pursuant to Fed. R. Civ. P. 59(e), ask the Court to alter or amend its April 21, 2008 Memorandum Opinion (the "Memorandum Opinion"), for the reasons set forth below.

### Introduction

This case concerns the Defendants' determination that Triad is liable for approximately $2 million in Medicare funds paid to affiliates of Brian Nursing Center Care Center/Austell, Inc., a wholly owned subsidiary of Mariner Health Care, Inc. ("Mariner"), the prior operator of five nursing home facilities now leased and operated by Triad. The Court dismissed this action, finding that it lacked subject matter jurisdiction to consider Triad's claims.

Triad respectfully asks that the Court vacate, clarify or revise the portion of the Memorandum Opinion whereby the Court denied Triad's motion to amend the complaint,

               1

based on the Court's determination that the proposed amendments would be futile. Memorandum Opinion at 25-32. Specifically, although it found that it did not have subject matter jurisdiction to consider Triad's claims under 42 U.S.C. Section 405(g), the Court, based on the limited evidence presented by Triad, drew several conclusions on the merits, including rejecting Triad's assertion that Mariner engaged in fraud as a defense to successor liability.

Triad is concerned that the findings on the merits, particularly on the issue of Mariner's fraud, made by the Court in the context of ruling on the motion to amend, may be used to limit Triad's ability to defend against successor liability in an administrative proceeding where Triad will assert its defenses. Triad is similarly concerned that the Court's determination that Triad failed to make a prima facia case of fraud will be misused in the separate judicial action that Triad will file against Mariner seeking to recover these funds.

Thus, Triad asks the Court to vacate or limit the effect of its determination on the merits, especially its conclusion that Triad failed to demonstrate that Mariner engaged in fraud by retaining approximately $2 million in Medicare funds. Memorandum Opinion at 30-32. No discovery directly addressing this topic has been conducted. The only information about Mariner's decision to retain these funds, and not advise Triad or the Defendants that it was going to do so, was obtained in a state court action whereby Triad is seeking lost profits because Mariner refused to vacate the nursing facilities in question on December 1, 2004, after being directed to do so by the owner because they had been leased to Triad. Indeed, at the time Triad conducted much of the discovery in its state court tort action against Mariner, Triad did not know that these funds had been paid to Mariner and that the Defendants would seek to regain them from Triad.

Triad believes that a more complete factual record will enable it to demonstrate that Mariner committed fraud: (1) in failing to disclose to Triad that it had been paid these funds and in failing to make arrangements to address this situation with Triad, as Defendants maintain is appropriate; (2) by not directing Defendants to stop making periodic interim payments, as Mariner was no longer providing care to Medicare beneficiaries; or (3) concealing its receipt of the funds by deliberately not filing final cost reports, which would have revealed the payments. However, Triad is concerned that the Court's discussion and comments relating to the fraud issue will be misused and, unless the Memorandum Opinion is revised, may preclude Triad from producing additional information during subsequent administrative and other judicial proceedings.

### Standard of Review

Pursuant to Fed. R. Civ. P. 59(e), the Court has the power to alter or amend its judgments based upon an intervening change in controlling law, the availability of new evidence, or to correct a clear error or prevent a manifest injustice. Firestone v. Firestone, 76 F. 3d 79, 81 (D.C. Cir. 1996). The decision to alter or amend will not be disturbed on appeal absent an abuse of discretion. Flynn v. Dick Corp., 481 F. 3d 824, 835 (D.C. Cir. 2007).

### Argument

**I.    The Court's Discussion of the Merits is Unnecessary and May Be Used Improperly In a Subsequent Administrative or Judicial Proceeding.**

A Court lacking jurisdiction over a case may not issue a decision on the merits. In re Papandreou, 139 F. 3d 247, 255 (D.C. Cir. 1998) (citations omitted). In the Memorandum Opinion, the Court granted the Defendants' Motion, ruling that it lacks subject matter jurisdiction to consider the merits of Triad's claims. However, in

addressing subject matter jurisdiction, the Court discussed fraud in determining that permitting Triad to amend its complaint would be futile.

Fed. R. Civ. Proc. 41(b) provides that a dismissal for lack of jurisdiction is not adjudication on the merits.   However, while a dismissal on jurisdictional grounds does not preclude a plaintiff from asserting the same claim in an alternate forum, a jurisdictional dismissal does preclude the relitigation of issues that were actually litigated related to the dismissal.  <u>GAF Corporation v. United States</u>, 818 F. 2d 901, 912 (D.C. Cir. 1987) ("The judgment ordering dismissal will, however, have a preclusive effect as to matters actually adjudicated; it will, for example, preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal.").

In the Memorandum Opinion the Court held that Triad must exhaust its administrative remedies before seeking judicial review as it cannot establish delay-related harm, in part, because it may propose and seek approval of an extended repayment plan ("ERP").  Memorandum Opinion at 15-21.  On the second day following issuance of the Memorandum Opinion, Triad filed applications for ERPs with Blue Cross Blue Shield of Georgia, Triad's Fiscal Intermediary, along with a check in the amount of $50,000, the monthly payment amount proposed by Triad.  Affidavit of Ronald M. Herbert in Support of Motion to Alter or Amend Judgment ("Herbert Affidavit") at paragraph 3.

In pursuing its administrative remedies Triad will also seek administrative review of Defendants' determination that Triad is responsible to pay to Defendants $2.0 million in Medicare funds paid to and retained by Mariner.  Herbert Affidavit at paragraph 4. This avenue of relief cannot, however, be pursued until the formal Notice of Amount of Program Reimbursement are issued several months from now.  Triad assumes that the

Court did not intend to preclude Triad's ability to litigate the merits of its dispute in the administrative context where the Court directed Triad to pursue relief. Indeed, such a result would be at odds with, and subvert, the Court's determination that it lacked the power to adjudicate Triad's claims.

Moreover, because the Court addressed the merits of Triad's fraud claim in denying Triad's motion to amend the complain, and not in connection with the threshold jurisdictional issue, Triad believes that the Court's discussion of the merits is not a matter actually adjudicated in connection with the Court's ruling that it lacks subject matter jurisdiction and may not address Triad's substantive claims. Dozier v. Ford Motor Co., 702 F. 2d 1189 (D.C. Cir. 1983) (dismissal for lack of subject matter jurisdiction based on insufficient amount in controversy was preclusive in a later action as to whether the amount in controversy requirement was met); Nutter v. Monongahela Power Co., 4 F. 3d 319, 321-22 (4th Cir. 1993) (although the district court's determination of whether the plaintiff's claims were preempted by federal law was intertwined with its conclusion that it lacked subject matter jurisdiction, the preemption determination was not preclusive in subsequent litigation).

Nonetheless, in an abundance of caution and to avoid claims that the Court's decision does, in fact, prevent Triad from litigating the merits, e.g., asserting that Mariner engaged in fraud either in an administrative proceeding or in subsequent litigation involving Triad and Mariner, Triad asks the Court revise the Memorandum Opinion to make clear that the discussion of the merits of the case does not constitute a matter actually adjudicated. Doing so will have no impact whatsoever on the Court's

determination that Triad need first exhaust its administrative remedies before seeking judicial intervention.[1]

## II.    The Court's Conclusion That Triad Failed to Establish Fraud by Mariner to Avoid Successor Liability Should Be Vacated.

The Court's comments on Triad's argument that it need not pay to Defendants almost $2.0 million in Medicare funds paid to Mariner, under the fraud exception to successor liability as set forth in Medicare Financial Management Manual Section 130, may be used to Triad's detriment. A similar misuse of the Court's discussion of this issue may occur when Triad seeks to obtain any funds it pays to Defendants by filing an action against Mariner.

In discussing fraud, the Court acknowledged that Section 130 would relieve Triad of successor liability if Triad could show that Mariner acted fraudulently in receiving and retaining these funds. The Court concluded, on a sparse factual record, that the facts presented "cannot support Triad's claims that Mariner's purported fraud excuses Triad from the liability associated with the Provider Agreements that it knowingly accepted." Memorandum Opinion at 32. In reaching this conclusion, the Court arguably prevents Triad from obtaining and presenting additional evidence demonstrating that Mariner engaged in fraud in: (1) obtaining these funds after it stopped providing services to Medicare beneficiaries with the intent never to return these funds to Defendants or make arrangements to pay them to Triad, as Triad was then providing services to the Medicare beneficiaries in the five nursing facilities no longer being operated by Mariner; and/or (2)

---

[1]    In its motion to amend, Triad claimed that the Court had subject matter jurisdiction under 42 U.S.C. § 405(g). In denying Triad's motion, the Court determined that it lacked jurisdiction under § 405(g) because Triad failed to show that "exhaustion [of administrative remedies] would be futile." Having made this determination, the Court did not need to address the merits of the case.

actively concealing receipt of almost $2.0 million in Medicare reimbursement so that Defendants seek to recover these funds from Triad.

The analysis of whether a party has committed fraud is fact-intensive and dependent upon the alleged fraudulent actor's knowledge and motivation. In <u>Media General, Inc. v. Tomlin</u>, 505 F. Supp. 2d. 51 (D. D.C. 2007), Judge Roberts stated that "[p]roving common law fraud requires a plaintiff to show that defendants, with the intent to induce reliance by plaintiff, knowingly falsely represented or wilfully omitted a material fact on which plaintiff relied to its detriment, resulting in provable damages." <u>Media General</u>, 505 F. Supp. 2d at 60 (citations omitted).

Much of the Court's limited discussion of fraud involves what the Court deemed to be Triad's "error in judgment" in accepting assignment of the Mariner provider agreements, rather than Mariner's conduct and motivation in obtaining and retaining the funds in question.   Memorandum Opinion at 31-32.   However, the fact that Triad accepted assignment of Mariner's provider agreements does not, in and of itself, demonstrate that Mariner could not have engaged in fraud.   Even if Triad's decision to accept the Mariner provider agreements was problematic (i.e., Triad should have known that Mariner would continue to receive Medicare payments after it stopped providing care and would not return those funds to Defendants or pay them to Triad which was then providing care), this does not mean that Mariner's subsequent actions were not motivated by fraud or animosity toward Triad.   Otherwise stated, in Triad's view, the Court should revise its decision to make sure that comments on fraud are not misused to prevent Triad from raising this issue in an administrative proceeding, the remedy that the Court held

Triad must exhaust, or in a separate action brought by Triad seeking to recover these funds from Mariner.

In terms of Mariner's conduct, the Court stated that Mariner's receipt of almost $2 million in Medicare payments does not, *ipso facto*, show fraud, nor does Mariner's failure to "follow certain agency procedures" appear to constitute fraud. Memorandum Opinion at 32. However, Mariner provided no services to Medicare beneficiaries for several months while still accepting and retaining almost $2.0 million for services it did not perform. Moreover, Mariner was being paid pursuant to the periodic interim payment methodology, which presumes that a provider receiving such payments continues to provide covered services to Medicare beneficiaries.[2] In fact, Mariner's occupancy of the five nursing homes in questions ended on November 30, 2006. As Triad related, Mariner did not file final cost reports for the nursing home facilities because Mariner did not have funds to pay the liability that would have been identified had those cost reports been filed. See Exhibit 3 to Plaintiffs' Memorandum In Opposition to Defendants' Cross-Motion for Summary Judgment and Reply to Defendants' Opposition to Plaintiffs' Motion For Summary Judgment.

Moreover, while receiving the funds and not filing closing cost reports, without more, may not necessarily demonstrate fraud, the opposite is also true, i.e., a provider that

---

[2]    As explained by Defendants, under the "periodic interim payment" methodology the Fiscal Intermediary derives the amount of the biweekly payments based upon historic payment levels and conducts semi-annual reviews "to ensure that the PIP payment amounts approximate actual costs as closely as possible." Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Memorandum in Support of Defendants' Motion to Dismiss Or, In the Alternative, Cross-Motion for Summary Judgment at 4.   In this case, the substantial payments received and retained by Mariner had no relationship whatsoever to the amount of the reimbursement Mariner based on the type and volume of service being provided, as Mariner was providing no services at all.

retained these funds, made no effort to disclose receipt of these funds, did not enter into an arrangement with the successor provider to responsibly dispose of the funds, and, did not file closing cost reports, may be guilty of fraud if other evidence is adduced.  Thus, Triad should be free to prove that Mariner did not file the closing cost reports because it did not want the Defendants or Triad to learn that Mariner had continued to be paid under the PIP methodology after it stopped providing care and neither intended to return these funds to Defendants nor planned to make an arrangement with Triad regarding the proper disposition of these funds since Triad was providing care to the Medicare beneficiaries while payments under the PIP methodology were still being made to Mariner.

It would be unfair for the Court to find that Triad cannot prevail on the merits of whether Mariner engaged in fraud in the administrative or some other judicial context. As previously noted, no discovery had been conducted in this action.  In order to more convincingly establish before an appropriate fact-finder that Mariner fraudulently retained the Medicare funds at issue in this case and, to establish that in accepting assignment of the Mariner provider agreements Triad, as Mariner's successor, is not liable for Medicare funds paid to Mariner after Mariner stopped providing care, due to the fraud exception to successor liability in Section 130 of the Medicare Financial Management Manual, discovery must be taken in the appropriate forum.   Triad is prepared to do this and to present this claim in the administrative context as the Court's determination that Triad had failed to exhaust its administrative remedies so directs. However, the Court's comments on fraud should not be used to prevent Triad from proceeding in that manner and seeking recovery from Mariner.  Accordingly, the Court should vacate that portion of the Memorandum Opinion discussing fraud or relate in

some manner that the fraud discussion does not prevent Triad from asserting and presenting proof that it is not liable to Defendants for these funds as a result of Mariner's fraud in an administrative or other judicial proceeding.

## <u>Conclusion</u>

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that this Court alter or amend the judgment by: (1) striking the discussion of the Plaintiffs' assertion that Mariner engaged in fraud; and (2) striking the discussion of the merits of the action (Memorandum Opinion at 25-32), or relating in some manner that the Court's comments and discussion of fraud do not constitute rulings on the merits and cannot be used to prevent Triad from asserting that Mariner engaged in fraud either in an administrative or some other judicial proceeding.

Respectfully Submitted,

_____/s/ Jack C. Tranter_____
Jack C. Tranter, Bar No. MD 00310
Thomas C. Dame, Bar No. MD 08352
Gallagher Evelius & Jones LLP
218 N. Charles Street, Suite 400
Baltimore, MD 21201-4033
(410) 727-7702

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 5th day of May, 2008, I mailed and emailed a copy of the foregoing Plaintiffs' Motion to Alter or Amend Judgment, along with the proposed Order,  to the following counsel for Defendants:

> Wendy M. Ertmer
> Trial Attorney
> Federal Programs Branch
> U.S. Department of Justice, Civil Division
> 20 Massachusetts Avenue NW, Room 7218
> Washington, D.C. 20530
> wendy.ertmer@usdoj.gov

>       /s/ Jack C. Tranter
> Jack C. Tranter, Bar No. MD 00310
> Thomas C. Dame, Bar No. MD 08352
> Gallagher Evelius & Jones LLP
> 218 N. Charles Street, Suite 400
> Baltimore, MD  21201-4033
> (410) 727-7702

# 354883 TCD
011397-0018

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRIAD AT JEFFERSONVILLE I, LLC,         *

et al.,

                *

        Plaintiffs

                *      Case No. 08-cv-00329

v.                *

MICHAEL O. LEAVITT, et al.,      *

        Defendants          *

**AFFIDAVIT OF RONALD M. HERBERT, JR.**
**SUPPORTING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

1.      My name is Ronald M. Herbert, Jr. I am at least 21 years of age and I am competent to testify to the matters set forth herein. I am the Chief Operating Officer of Triad Senior Living, LLC ("TSL").

2.      Plaintiffs are five separate, but affiliated, entities that operate nursing homes in Georgia (collectively, "Triad"). TSL provides management services for each of the nursing homes.

3.      Upon receiving the Court's Memorandum Opinion dated April 21, 2008, Triad immediately prepared applications for extended repayment plans for each of the five affected nursing homes. The applications, which included extensive and detailed financial schedules, were initially submitted to Medicare's Fiscal Intermediary, Blue Cross and Blue Shield of Georgia, on April 23, 2008, and all financial schedules were submitted by May 1, 2008. On April 23, 2008, Triad also submitted initial payments in the total amount of $50,000 pursuant to the proposed repayment plans.

# 354883 TCD
01139?-0018

2

4.    Notwithstanding the proposed extended repayment plans, Triad intends to pursue administrative remedies to contest the decision of the Centers for Medicare and Medicaid Services ("CMS") to impose successor liability upon Triad for the wrongful acquisition and retention by Triad's predecessors of approximately $2 million in Medicare funds.

I solemnly affirm under the penalties of perjury that the contents of the foregoing Affidavit are true and correct based upon my personal knowledge.

_____          _____
Date                                               Ronald M. Herbert, Jr.

5. MAY, 2008                                   c.o.o.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRIAD AT JEFFERSONVILLE I, LLC,          *
*et al*.,
                                          *
            Plaintiffs
                                          *   Case No. 08-00329
v.
                                          *
MICHAEL O. LEAVITT, *et al*.,
                                          *
            Defendants
                                          *

**ORDER GRANTING PLAINTIFFS'
MOTION TO ALTER OR AMEND JUDGMENT**

Upon consideration of the Motion to Alter or Amend Judgment filed by Plaintiffs

Triad at Jeffersonville I, LLC, Triad at LaGrange I, LLC, Triad at Lumber City I, LLC,

Triad at Powder Springs I, LLC, and Triad at Thomasville I, LLC, and any opposition

thereto, it is this _____ day of _____, 2008, hereby:

1.       **ORDERED** that Plaintiffs' Motion to Alter or Amend Judgment be, and

hereby is, GRANTED; and it is further

2.       **ORDERED** that the Court's April 21, 2008 Memorandum Opinion shall

be modified by striking the discussion under the heading "Futility of Amendments Based

on the Merits of Triad's Claims" (Section III.(B)(2), at pages 25 – 32) as well as the last

sentence on the bottom of page 24 and continuing on the top of page 25; and it is further

3.     **ORDERED** that copies of this Order shall be served on all parties of

record.

_____
Judge, United States District Court for the
District of Columbia